UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERIBERTO RIOS, ) | |
| ) | |
| Plaintiff, ) | 08 C 2596 |
| ) | |
| vs. ) | Honorable Judge |
| ) | Suzanne Conlon |
| CERMAK HEALTH SERVICES OF COOK ) | |
| COUNTY, DR. SERGIO RODRIGUEZ MED DIR ) | Magistrate Judge Nolan |
| DR. CONNIE MANELLA ASST. DIR, ) | |
| DR. DEFUNIAK M.D., DR. TREMEL, P.A. ) | |
| MS. LAURY HEAD NURSE, ) | |
| MS. MOHAMMED SUP. NURSE ) | |
| NURSE GARBO, NURSE WILLIS ) | |
| NURSE McBRIDE, NURSE DAVIS, ) | |
| NURSE JACKIE ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

NOW COME the Defendants', Dr. Defuniak, Dr. Tremel, Ms. Laury, Ms. Mohammed, Nurse Garbo, Nurse Willis, Nurse McBride, Nurse Davis, Nurse Jackie, Nurse Moss, through their attorney Richard A. Devine, through his assistant, Michael A. Kuczwara Jr., and pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, present the following Answer to Plaintiff's Complaint:

1.      In the month of April 2006, there were discrepancies with the dispensing of medical supplies, specifically urethral catheter.  I began suffering problems and pains in my bladder area.  I informed Nurses; Moss, McBride, David, Garbo and Jackie at different times and occasions and only received complaints.

ANSWER: Defendants deny the allegations contained in paragraph 1 of Plaintiff's Complaint.

1

2.      I began writing grievances in reference to lack of supplies, but was only referred to patient care services, which didn't help.  My appeals to these grievances were all dismissed.

ANSWER: Defendants deny the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.      In approximately the first or second week of May there was blood being discharged when I catheterd and the urine had a very foul and ammoniums smell to it.  By this time, I had been reusing single use latex catheters.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 3 of Plaintiff's Complaint.

4.      As I complained, less and less attention was given to me and the situation got worse.  By this point I had written the Head Nurse Mrs. Laury and Supervising Nurse Mrs. Mohammed.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 4 of Plaintiff's Complaint.

5.      Nurse Laury only referred it to the other nurses.  I finally saw Sup. Nurse Mohammed who had brought me a couple of catheters that was too small.  At this time my prostate was swelling and making it difficult to catheter.

ANSWER: Defendants deny the allegations contained in paragraph 5 of Plaintiff's Complaint.

6.  My left testicle was beginning to swell.  I was unable to eat, sleep or even lay down without discomfort.  It took my loud verbal protest and calls to the Medical Director, Dr. Rodriguez before I was seen by the doctors on the unit.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 6 of Plaintiff's Complaint.

7.  I was held in Division 8 Residential Medical Unit.  The doctors at the time were Dr. DeFuniak M.D. and Dr. Tremel P.A.  I believe I saw Dr. DeFuniak first and was told that I was an infection and not to worry about it.

ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 7 of Plaintiff's Complaint.

8.  I was given antibiotics and pain medication which was seldomly dispensed properly.  I complained many times to Nurses; Garbo, Moss McBride and Jackie about my medications, but was ignored.

ANSWER: Defendants deny the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.  I maintained regular fevers and was losing weight.  Diarrhea was also a constant situation.  Towards the end of May 2006, the situation was so bad, that my left testicle was approximately the size of my fist.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 9 of Plaintiff's Complaint.

10.     In all this time I was told that I would see the Urologist, but never did. It took Sgt. Hayes and my inability to handle the pain any longer to be sent to the hospital. I think, I first went to John H. Stroger Hospital where I was diagnosed with Epididimatis was given pain medications and put on IV's.

ANSWER: Defendants deny the allegations contained in paragraph 10 of Plaintiff's Complaint.

11.     I was returned that evening with prescribed antibiotics and pain medications. It took approximately 3-4 days for my antibiotics and was denied the pain medications. I was told that I didn't need them and would be fine.

ANSWER: Defendants deny the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Two nights later I was sent to Mt. Sinai Hospital. The symptoms persisted and got worse. In the last week of May 2006, I finally was seen by Dr. Vidal the Urologist. I was told my infection should have never gone this far, Dr. Vidal prescribed medications for pain, infection, fever, diarrhea and yogurt to replenish the good bacteria in my colon. Again, much of what was prescribed was not given in addition, Dr. Vidal told me to watch out for abscessing, that it could be dangerous.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 12 of Plaintiff's Complaint.

13.    I informed Dr. Tremel and he told me not to worry, that when I got down state it would be taken care of. Around the 2nd and 3rd day after my visit with Dr. Vidal the abscessing on the already swollen testicle began.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 13 of Plaintiff's Complaint.

14.    The pain got worse and my testicle began changing color. Through all this time, I continually complained to nurses, and wrote grievances to no avail. I saw Dr. Tremel in the hallway and pleaded to see him. When he finally called, I showed him the abscessing and was told that I would be leaving soon and he could do no more.

ANSWER: Defendants deny the allegations contained in paragraph 14 of Plaintiff's Complaint.

15.    On June 5th 2006 I sent from Cook County Jail to Dixon Correctional Center. Upon intake processing at Dixon C.C., I informed the nurse about my situation. The nurse response was that Cook County Jail neglected to seen my medical file and asked to see my testicle. When I showed her, she was surprised and said that I should have never been sent in this condition.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 15 of Plaintiff's Complaint.

16.     I was then seen by Dr. Colgan PA and Dr. Ngu M.D., (the main Dr. at Dixon). They asked "me" what I was taking and continued the medications.  The fever persisted.  Along with the diarrhea, pain, weight loss and my testicle was getting darker.  About 5-7 days later I was admitted to the infirmary at Dixon C.C.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 16 of Plaintiff's Complaint.

17.     My situation only worsened.  I was told by Dr. Ngu, Dr. Dehiya that I almost died.  One night while in the infirmary, I reached a fever of 106.3° and they couldn't get it under 104° Dr. Colgan was called and Dixon C.C. was given the OK to send me out to KSB Hospital in Dixon, IL.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 17 of Plaintiff's Complaint.

18.     I don't know what happened there, but I had to be air lifted by "Air Angles Rescue" to Illinois Medical Center Hospital in Chicago.  Again, I was told by Dr. Nash M.D. at the hospital that I almost died because my testicle had gone necrotic and was poisoning my body and blood.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 18 of Plaintiff's Complaint.

19.     My left testicle was removed and a pic line was placed in my right arm in order to receive intravenous medications. Although my testicles were removed, my blood was infected and contracted a staph infection. Because of the infection in my blood, the pic line and my vein had collected the infection and they both, pic line and vein, had to be removed.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 19 of Plaintiff's Complaint.

20.     Because of the infection in my blood, the pic line and my vein had collected the infection and they both, pic line and vein, had be removed. I now had to get a central line that was placed in my artery in my chest in order to receive my I.V. medications. I now have a scar from the bend in my elbow, inner right arm, up to my collar bone above my chest. The scar is approximately 12-14" long.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 20 of Plaintiff's Complaint.

21.     I stayed over a month at Illinois Medical Center Hospital in Chicago. In that time, I went from critical care to intensive care then to a regular floor. I was discharged in mid July to the Infirmary at Dixon Correctional Center.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 21 of Plaintiff's Complaint.

22. I stayed in the Infirmary for another 1-2 months still on I.V. antibiotics. I lost at least 40 lbs in weight, my left testicle, and the vein in my right bicep. Around December 2007 I began gaining weight. It took me about 6 months to recover to 75% of my health. I suffer circulation problems, and psychological problems because of this incident.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 22 of Plaintiff's Complaint.

23. I do not feel complete and suffer from depression and anxiety disorder now. It was wrong what Cermak Health Services of Cook County and the doctors and nurses working at the Cook County Jail did and allowed to happen to me. They did the complete the complete opposite of what their job description says health care providers that are not.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 23 of Plaintiff's Complaint.

24. This is a case of medical negligence and deliberate indifference. They violated my rights as a detainee and worse as a human being. I would also include criminal negligence because they knew it was wrong not to help me.

ANSWER: Defendants deny the allegations contained in paragraph 24 of Plaintiff's Complaint.

25. Upon my release my Fiancée and I were blessed with a child. The child was born with a birth defect. My Fiancée and I was told that without the proper research, it could be said for sure, but that it may be possible a link between my illness and he medications and possible continual use of my depression medications that caused by sons birth defect. The doctor said that a list of all medications and the length and strength of them to be sure.

ANSWER: Defendants deny the allegations contained in paragraph 25 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

Defendants, by and through their undersigned attorney plead the following Affirmative Defenses to Plaintiff's First Amended Complaint:

1. The Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004).

2. The defendants request a hearing to examine whether the plaintiff has exhausted all administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). See Pavey v. Conley, 2008 U.S. App. LEXIS 11963 (7th Cir. 2008).

3. Defendant, Cook County, is a local public entity. Accordingly, is immune from punitive damage awards. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981).

4. To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful wanton, and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault in an amount commensurate with the degree of fault

attributed to Plaintiff by the jury in the case. In addition, to the extent that Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by the amount of damages attributed to Plaintiff by the jury in this case.

5. The Defendants' conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights. Accordingly, the Defendants are entitled to the defense of Qualified Immunity.

**JURY DEMAND**

Defendants, respectfully demand trial by jury.

Respectfully submitted,

RICHARD A. DEVINE
State's Attorney of Cook County

By:S/Michael A. Kuczwara Jr.
Michael A. Kuczwara Jr.
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3233